UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABDO ASKAR, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-0109-X |
| | § | |
| ENVOY AIR, INC., | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Envoy Air, Inc.'s (Envoy) partial motion to dismiss. (Doc. 35). After reviewing the parties' briefs, the complaint, and the applicable, law the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss. The Court **DISMISSES WITHOUT PREJUDICE** all claims except Abdo Askar's race and national origin discrimination, wrongful termination, and retaliation claims. Finally, the Court **GRANTS LEAVE** to Askar to replead within twenty-eight days from the date of this order only to address the issues identified in this order.

**I. Factual Background**

This is an employment discrimination case. According to Plaintiff Abdo Askar's second amended complaint, he is Hispanic and was born in Mexico. At some point while working at Envoy, Askar crossed paths with Miguel Ocampo, who, according to Askar, is responsible for the bulk of the purported harassment and discrimination Askar faced. Askar brings several events to the Court's attention.

1

On November 3, 2021 someone yelled at Askar to "go back across the border with all the spicks."[1] After that date, Askar was called "Mexican trash," "brown beaner," "and "spick" on several occasions.[2] Askar filed a report with human resources on March 14, 2022. Then on April 9, 2022, Askar followed up with human resources about his complaint and two days later, someone from human resources let Askar know that the investigation has been completed and no further details were available.

The complaint notes that Ocampo would "often get the other employees to join in the mocking of Plaintiff and encourage other employees to call him derogatory and racist[] names with regards to being Latino/Hispanic and of Mexican birth."[3] Then in June of 2022, Ocampo "told everyone to make life 'hell' for" Askar so Askar would "take his 'brown ass back across the border.'"[4]

In August of 2022, Askar was in a company vehicle when Ocampo "slammed his hand into the mirror of the truck [Askar] was driving."[5] Ocampo allegedly opened the door and assaulted Askar—attempting to drag him from the vehicle. The same day, Askar's supervisor placed Askar on paid leave (but he never actually received pay). Askar heard from co-workers that his supervisor and people in human resources had mentioned that Askar was "always complaining about discrimination

---

[1] Doc. 39 at 3.

[2] Doc. 39 at 3.

[3] Doc. 39 at 4.

[4] Doc. 39 at 4.

[5] Doc. 39 at 5.

and harassment and that they just needed to get the job done or else there was no place for them at Envoy."[6] Askar also learned through colleagues that Envoy had hired "a non-Hispanic, non-brown, non-Mexican to replace him."[7]

## II. Legal Standard

Federal Rule of Civil Procedure 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] The pleading standard does not require detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[9] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[10] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] For purposes of a motion to dismiss, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[12]

---

[6] Doc. 39 at 5.

[7] Doc. 39 at 6.

[8] Fed. R. Civ. P. 8(a)(2).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Id.* (cleaned up).

[11] *Id.*

[12] *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 379 (5th Cir. 2007).

### III.  Analysis

Envoy moves to dismiss several of Askar's claims.  The Court addresses each in turn.

### A.  Race and National Origin Discrimination and Wrongful Termination

Askar asserts a claim under Texas law for wrongful termination under section 21.051 of the Texas Labor Code.  Both Title VII and the Texas Labor Code "have similar language," and, as a result, courts "often analyze the parallel claims together under the Title VII framework."[13]  Askar must plead two things "(1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status."[14] And while *McDonnell Douglas* does not apply at the motion to dismiss stage, it can be helpful to reference *McDonnell Douglas* to assess the sufficiency of the pleadings.[15]

Under the *McDonnell Douglas* framework, Askar would need to show that Askar: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."[16]  While the Court does not require Askar to meet the *McDonnell Douglas* test, it is helpful in understanding what sort of pleading

---

[13] *Willis v. W. Power Sports, Inc.*, No. 23-10687, 2024 WL 448354, at *2 (5th Cir. Feb. 6, 2024) (per curiam).

[14] *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599–600 (5th Cir. 2021) (cleaned up).

[15] *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021), *as revised* (Nov. 26, 2021) (per curiam).

[16] *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (cleaned up).

is necessary to reflect that Askar suffered an adverse employment action *on account of* his protected status.[17]

Askar pleads that he learned that Envoy hired someone outside of his protected class to replace him at Envoy. And Envoy apparently never reprimanded or disciplined Askar. His alleged clean track record at Envoy coupled with Envoy purportedly hiring someone outside of Askar's protected class are enough to convert the claim for wrongful termination from merely conceivable to plausible. Therefore, the Court **DENIES** the motion to dismiss as to the race and national origin discrimination and wrongful termination claims. And because the Court denies the motion on these claims, it need not address Askar's other theories involving the failure to investigate and the refusal to pay during Askar's leave.

### B. Retaliation

Title VII also prohibits an employer from "discriminat[ing] against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[18] To state a retaliation claim under Title VII a plaintiff must allege facts that tend to establish: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the two.[19] The "plaintiff must show that a reasonable

---

[17] *See Scott*, 16 F.4th at 1210.

[18] 42 U.S.C. § 2000e-3(a).

[19] *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021).

employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[20] But Title VII does not immunize employees from slight annoyances at work.[21]

Askar pleads he suffered two retaliatory adverse employment actions: hostile work environment and termination.[22]

As for the retaliatory hostile work environment claim, the Fifth Circuit has never recognized a retaliatory hostile work environment claim, although twelve other circuits have.[23] The Court declines to recognize that claim here.[24] In any event, Askar fails to adequately plead his hostile work environment claim, as the Court discusses below.[25]

As for the retaliatory termination claim, Askar gets it through the pleading stage. First, Askar alleges he "made repeated complaints to human resources and

---

[20] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up).

[21] *See id.* (collecting sources).

[22] Askar mentions in his complaint that he suffered a "campaign of retaliation." (Doc. 39 at 8). It is not clear whether Askar intended this as a separate adverse employment action or as a way to frame the adverse employment actions he discusses in the following paragraph. (Doc. 39 at 8). Given that Askar never mentions the "campaign of retaliation" in his response to the motion to dismiss, the Court assumes Askar means to plead a hostile work environment and termination as adverse employment actions.

[23] *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 741 n.5 (5th Cir. 2017), *as revised* (Mar. 13, 2017).

[24] The parties did not brief this issue, but the Court has concerns that the claim is not viable based on a textualist reading of Title VII. Namely, because a hostile work environment claim has, as one of its elements, that the harassment "affected a term, condition, or privilege of employment," *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012), and that language appears in the anti-discrimination provision but not the anti-retaliation provision of Title VII that Title VII's anti-retaliation provision does not encompass a hostile work environment claim. *Compare* 42 U.S.C. § 2000e-2(a)(1) *with* 42 U.S.C. § 2000e-3(a).

[25] *See infra* pp. 8–9.

assisted with the investigation into incidents that were the underlying basis of [his] complaints."²⁶  That is protected activity.  He also alleged termination, which is a classic adverse employment action.  Finally, Askar pleads that human resources staff "mentioned to staff members that [Askar] was always complaining about discrimination and harassment and that they just needed to get the job done or else there was no place for them at Envoy."²⁷  This reveals that those at Envoy knew about and did not like that Askar "was always complaining."  Envoy, for its part, relies on a single case (which was later reversed on the ground cited for) for the proposition that absent a pleading identifying a decisionmaker that the pleading cannot go forward.²⁸  But in the Fifth Circuit opinion reversing the district court, the Fifth Circuit expressly mentioned a case that was "unclear on both the identity of the decisionmaker for the adverse action and when that decision was made."²⁹  In summation, the Fifth Circuit said: "the rules governing causation pleading for Title VII retaliation claims are not quite so rigid as the district court made them out to be."³⁰  Here, the Court can infer that those connected to higher-ups at Envoy knew of Askar's complaints and did not like them.  Envoy then ended up firing him.  This is enough to push the claim from conceivable to plausible.  Therefore, the Court

---

²⁶ Doc. 39 at 9–10.

²⁷ Doc. 39 at 5.

²⁸ Doc. 34 at 8 (citing *Smith v. Kendall*, No. SA-21-CV-1154-JKP-RBF, 2023 WL 4552763 (W.D. Tex. July 14, 2023), *reconsideration denied*, No. SA-21-CV-1154-JKP, 2023 WL 5835187 (W.D. Tex. Sept. 8, 2023), *and aff'd in part, vacated in part, rev'd in part*, No. 23-50713, 2024 WL 4442040 (5th Cir. Oct. 8, 2024)).

²⁹ *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *8 (5th Cir. Oct. 8, 2024) (per curiam) (citing *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 & n.29 (5th Cir. 2020)).

³⁰ *Id.*

7

**DENIES** Envoy's motion as to the retaliation claim. And because the Court denies the motion on these claims it need not address Askar's other theories involving the failure to investigate and the refusal to pay during Askar's leave.

### C. Hostile Work Environment

To succeed on his hostile work environment claim, Askar must plead facts reflecting that he:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[31]

As to the fifth element (knowledge), Askar pleads one specific report he filed with Human Resources on March 14, 2022 and followed up on April 9, 2022.[32] Askar "asked [Envoy] for help" in June of 2022 in response to when Ocampo allegedly told co-workers to "make life 'hell' for [Askar] so he would take his 'brown ass back across the border.'"[33] Asking for help does not necessarily mean that Envoy had knowledge of the underlying events giving rise to the request for help. If Askar pled that he reported the incident—that might be a different story, but asking for help does not mean Envoy was aware of the facts giving rise to the request.

Additionally, while Askar pleads that he "reported each incident of discrimination and harassment by Ocampo to [Envoy] on multiple occasions,"[34] this

---

[31] *Hernandez*, 670 F.3d at 651.

[32] Doc. 39 at 3–4.

[33] Doc. 39 at 4.

[34] Doc. 39 at 4.

8

is conclusory. Pleading that he reported all discrimination and harassment is no different than if he simply pled that "Envoy has knowledge of all harassing and discriminatory conduct." Sure, Askar pled it as a fact—but because it is so conclusory the Court cannot rely on it. Because no other facts in the complaint indicate Envoy knew of the purported assault or threat, the assault and threat cannot be a part of any hostile work environment claim.[35]

In fact, the only acts that Askar sufficiently pleads knowledge of are "several instances" where Ocampo used racial vitriol against Askar.[36] Courts look to different factors to determine if the purported harassment affects a term, condition, or privilege of employment, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[37] Here, with an unknown frequency of offensive utterances, even if the employee avoids the person making the utterances, is insufficient to plead a hostile work environment claim.[38] As a result, the Court **GRANTS** the motion as to the hostile work environment claim.

---

[35] *See McKinnis v. Crescent Guardian, Inc.*, 189 F. App'x 307, 308 n.1 (5th Cir. 2006) (supporting the notion that incidents lacking knowledge requirement cannot be a part of a hostile work environment claim).

[36] Doc. 39 at 3.

[37] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (cleaned up).

[38] *See Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023) (pleading only two instances of racial speech was insufficient to uphold a hostile work environment claim).

### D.  42 U.S.C. § 1983

Askar brings another claim for a violation of Title 42, section 1983 of the United States Code.  Section 1983 claims only apply to those acting under color of state law and Askar makes no allegation that Envoy acted as such.  Indeed, Askar does not defend this claim in the response to the motion to dismiss.  Accordingly, the Court **GRANTS** the motion to dismiss as to the section 1983 claim.

### E.  Respondeat Superior

Askar concedes that his "claim" for respondeat superior is not a claim at all, but an assertion of a legal theory placed at the end of his complaint for organizational purposes.  The Court **GRANTS** the motion to dismiss on respondeat superior only to the extent this pleads a separate claim for "respondeat superior."

## IV.  Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Envoy's the motion to dismiss.  The Court **GRANTS LEAVE** to Abdo Askar to replead twenty-eight days from the date of this order only to address the issues identified in this order.

**IT IS SO ORDERED** this 26th day of February, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE